**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JOHNNIE BANKSTON, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 15−cv−1275−NJR |
| | ) |
| MICHAEL WILLIAMS, | ) |
| | ) |
|        Defendant. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Johnnie Bankston, an inmate in Pontiac Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 for events that occurred at Shawnee Correctional Center. On September 8, 2016, Plaintiff notified the Court that he is currently at Pontiac on a writ, but he expects to be returned to Shawnee (which is consistent with the information on the website for the Illinois Department of Corrections ("IDOC") that shows he is still at Shawnee). Bankston requests injunctive relief and damages based on the refusal to allow him to practice his chosen religion.

This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>     (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>     (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Bankston originally filed this action on November 16, 2015. (Doc. 1). The Court undertook to screen the Complaint on December 15, 2015, but because Bankston failed to sign it, the Court instead directed him to file a signed amended complaint. (Doc. 6). Bankston then requested an extension of time in which to file the amended complaint. (Doc. 9). The Court granted that motion, and on January 28, 2016, Bankston filed the First Amended Complaint. (Doc. 12).

Bankston is a member of the Nation of Gods and Earths. (Doc. 12, p. 2). On March 30, 2015, he met with Chaplain Williams to discuss organizing services for his religion. (Doc. 12, p. 2). Bankston's beliefs require a Parliament to be held once a month, along with weekly civilization classes. (Doc. 12, p. 2). Bankston also requested permission to use the emblem of the church. (Doc. 12, p. 2). Bankston alleges that Williams agreed and told Bankston that services would be held on April 4, 2015. (Doc. 12, p. 2). Yet Bankston was not issued a call pass when that date arrived. (Doc. 12, p. 2). Bankston filed a grievance on this issue on May 16, 2015.

(Doc. 12, p. 2). He then asked Williams about the missed service in person. (Doc. 12, p. 2). Williams told Bankston that he had been out of town on April 4, 2015, but that he would call services for the members the next week. (Doc. 12, p. 2). No service was held, and Bankston wrote another grievance on June 20. (Doc. 12, p. 3).

On September 17, 2015, Bankston received a memorandum from the Chaplain regarding his request. (Doc. 12, p. 3). Bankston spoke to the Chaplain in person again on October 14, 2015, at which time Williams told Bankston that services would not be held unless Bankston could stay out of segregation. (Doc. 12, p. 3). Bankston also alleges that certain institutions within the IDOC, including Shawnee, have put the Nation of Gods and Earths on the security threat group list, in violation the constitutional rights of its members.

## Discussion

Based on the allegations of the First Amended Complaint, the Court finds it convenient to divide the *pro se* action into three counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The following claims survive threshold review:

**Count 1:** **Defendant Williams violated Plaintiff's First Amendment rights when he refused to hold services for the Nation of Gods and Earths;**

**Count 2:** **Defendant Williams violated Plaintiff's rights under the Religious Land Use and Institutional Persons Act (RLUIPA) when he refused to hold services for the Nation of Gods and Earth.**

**Count 3:** **Plaintiff's First Amendment rights were violated when the Nation of Gods and Earths was designated a security threat group.**

As to **Count 1**, an inmate is entitled to practice his religion under the First Amendment "insofar as doing so does not unduly burden the administration of the prison." *Hunafa v. Murphy*,

907 F.2d 46, 47 (7th Cir. 1990). A rule impinging on that right "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S.78, 89 (1987). Restrictions on access to religious services and other opportunities are reviewed in light of the four *Turner* factors: (1) whether there is a valid and rational connection between the regulation prohibiting access and a legitimate governmental interest to justify it; (2) whether there are alternative means of exercising the right to practice religion that remain open to inmates; (3) whether accommodation of the right to practice would have a significant impact on prison staff or other inmates; and (4) whether the regulation is reasonable in terms of allowing prisoners use of available alternatives. *Turner*, 482 U.S. at 78; *see also Beard v. Banks*, 548 U.S. 521 (2006). In light of this authority, Defendant Williams's denial of Bankston's request to hold services along with other inmates states a First Amendment claim that withstands scrutiny under § 1915A at this early stage of the case.

Turning to the RLUIPA claim in **Count 2**, this statute provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a).

Notably, money damages are not available to a plaintiff under RLUIPA. *Vinning-El v. Evans*, 657 F.3d 591, 592 (7th Cir. 2011) (money damages are not available in suits against a state under the RLUIPA; further, money damages cannot be awarded against public employees in their personal capacities (citing *Sossamon v. Texas*, 563 U.S. 277 (2011)); *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989); *Nelson v. Miller*, 570 F.3d 868 (7th Cir. 2009)).

Bankston could seek injunctive relief under the RLUIPA, however, he is no longer housed at Shawnee, where his claims against Defendant Williams arose. "[W]hen a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief, and hence the prisoner's claim, become moot." *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004). *See also Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). Only if Bankston can show a realistic possibility that he would again be incarcerated at Shawnee under the conditions described in the Amended Complaint, would it be proper for the Court to consider injunctive relief in this action. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (citing *Ortiz v. Downey*, 561 F.3d 664, 668 (7th Cir. 2009)). The Court finds that Bankston has made this showing here, however, as his last change of address indicates he expected to spend a week at Pontiac, starting on September 9, 2016, and that week has not yet expired. The Court will allow Bankston's claim for injunctive relief in Count 2 to proceed at this time, although if Bankston were transferred away from Shawnee permanently, his claim would be moot.

**Count 3** must be dismissed, however. Bankston has alleged that the designation of the Nation of Gods and Earths as a security threat group was improper. While Bankston named both the IDOC and its Director, John Baldwin, in his original unsigned Complaint, neither of those parties is mentioned in the First Amended Complaint, which has the effect of terminating them from this litigation. (Doc. 12). Bankston also has not alleged that Williams made the allegedly improper designation. In order to be held individually liable, a defendant must be "personally responsible for the deprivation of a constitutional right." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). **Count 3** fails because Bankston has not alleged that Williams was responsible for designating his religion as a security threat group, and

Bankston has not described or attempted to identify any other defendant who might have done so. Dismissal of this count shall be without prejudice.

## Pending Motions

Bankston's Motion to Appoint Counsel (Doc. 3) will be referred to Magistrate Judge Donald G. Wilkerson for disposition.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1** and **2** shall proceed in this litigation.

**IT IS HEREBY ORDERED** that **COUNT 3** fails to state a claim upon which relief may be granted, and thus is **DISMISSED without prejudice**.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendant Williams: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Donald J. Wilkerson for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Wilkerson for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, he and his attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay

therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 15, 2016**

*Nancy J. Rosenstengel*
_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**