IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNIE BANKSTON, | |
| Plaintiff, | |
| v. | Case No. 3:15-CV-01275–NJR |
| MICHAEL WILLIAMS, JEFFREY DENNISON, AND SAMUEL STERRETT, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion for summary judgment under Federal Rule of Civil Procedure 56 filed by Defendants, Michael Williams, Jeffrey Dennison, and Samuel Sterrett (Doc. 178). Plaintiff Johnnie Bankston has also filed a Motion to Strike (Doc. 183). For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part, and Bankston's motion to strike is granted.

### BACKGROUND

Bankston, an inmate of the Illinois Department of Corrections ("IDOC") filed this lawsuit on November 16, 2015 (Doc. 1) pursuant to 42 U.S.C. § 1983, alleging that he was being denied various aspects of his religion, Nation of Gods and Earths ("NGE") while incarcerated in Shawnee Correctional Center ("Shawnee"). Bankston named various prison officials as defendants, including Samuel Sterrett, current Chaplain at Shawnee; Jeffery Dennison, the Warden of Shawnee; and Michael Williams, former Chaplain at

Shawnee. Bankston is proceeding on two counts: Count I alleges claims under the First Amendment against Defendants related to the denial of religious services and Count III alleges claims under the First Amendment against Defendants for the failure to provide an adequate diet that conformed to Plaintiff's religious beliefs (Doc. 129).

### a. Bankston's Requests for Religious Services

Inmates are responsible for soliciting leadership from outside the prison to hold services not already offered at Shawnee (Doc. 178, p.3). The outside leadership must be recognized as having senior status to be able to lead or instruct others (*Id.*). If an inmate does not take the first step and provide evidence that he or she solicited outside leadership to conduct the services, the process of beginning the new services would not continue (*Id.*). Chaplain Williams told Bankston to find an outside volunteer to lead services if he wanted to have NGE services at Shawnee (*Id.*).

Bankston and Defendants disagree on the facts surrounding Bankston's solicitation of outside volunteers and whether he submitted a proposal for the inmate-led services to Chaplain Williams on March 30, 2015. It is undisputed, however, that NGE members conduct "Civilization Classes," "Parliaments," and "Rallies" wherein members gather to help one another learn their lessons (Doc. 182, pp. 9-10). The "Civilization Classes," "Parliaments," and "Rallies" were the religious services Bankston was seeking at Shawnee (Doc. 129, pp. 1-11).

### b. Bankston's Religious Diet

On July 31, 2016, Chaplain Williams approved Bankston's request for a vegan diet

at Shawnee (Doc. 178, pp. 5-6).[1] Less than three months later, on October 21, 2016, Bankston spoke with Chaplain Williams requesting a kosher diet (*Id*. at 6). After this meeting, Chaplain Williams gave Bankston an Offender Request for Religious Diet form (*Id*.).

Around November of 2016, Bankston submitted a request slip to inform Chaplain Williams that he needed to be put back on the list for his diet tray and to see if he had been reassigned to a different diet, such as a kosher diet (*Id*.). On November 15, 2016, Chaplain Williams renewed Bankston's original vegan diet (*Id*.). On November 29, 2016, Chaplain Williams sent Bankston a memorandum indicating that his request for a kosher diet was under review and requested Bankston to answer a few questions (*Id*. at p. 7). On December 3, 2016, Bankston wrote to Chaplain Williams answering the questions and explaining that he would like a kosher diet based on the requirements of his religion (*Id*.). Bankston also explained to Chaplain Williams that he could have a vegan, kosher, or halal diet. (*Id*.). By early 2017, Bankston was removed from the list of those receiving a vegan diet due to lack of participation and was eating regular trays (*Id*.). After being removed from the vegan diet, Bankston was eating approximately 60% of the food items on the breakfast trays and approximately 40% of the food items on the other trays (*Id*. at p. 8).

On December 1, 2017, Bankston was approved for a kosher diet (*Id*. at p. 9). On January 17, 2018, Bankston filed a grievance that the kosher trays are not kosher because they contain processed meat and the Rabbi does not bless the kosher trays (*Id*. at pp. 9-

---

[1] At all relevant times for this dispute, Bankston was incarcerated at the Shawnee Correctional Center (Doc 140, p.3; Doc. 173, p. 3). Bankston, however, was housed at times at the Pontiac Correctional Center on his "court writs" (Doc. 178-2, p.2; Doc. 178, pp. 6, 9-10).

10). Then in March of 2018, Bankston requested to be removed from his kosher diet because "it isn't kosher and doesn't fit [his] religious diet." (*Id.*; Doc. 178-2, p. 9). On April 9, 2018, Defendants Sterrett and Dennison approved Bankston's request to discontinue his religious diet (Doc. 178, p. 11). By April 21, 2018, Bankston was transferred to Lawrence (Doc. 140, p. 4; Doc. 173, p. 4).

## LEGAL STANDARD

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. At the summary judgment phase of the litigation, the facts and all reasonable inferences are drawn in favor of the nonmoving party. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 703 F.3d 966, 972 (7th Cir. 2012). The Court shall "neither come to a conclusion on factual disputes nor weigh conflicting evidence." *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). To survive summary judgment a non-moving party must "show through specific evidence that a triable issue of fact remains on issues for which the nonmovant bears the burden of proof at trial." *Knight v. Wiseman*, 590 F.3d 458, 463-64 (7th Cir. 2009). Summary judgment shall be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

I.   **Motion to Strike**

Bankston seeks to strike the following exhibits from Defendants' motion for summary judgment: (1) Exhibit 4 – titled Warden's "Special" Staff Meeting March 1, 2016;

and (2) Exhibit 8 – Plaintiff's Living Unit History.

Bankston contends these exhibits were not produced by Defendants prior to the filing of the motion for summary judgment, as such, Defendants should not be allowed to rely on them at the summary judgment stage. Federal Rule of Civil Procedure 26(a)(1)(A) requires parties to provide each other a copy of all documents, electronically stored information, or other tangible things that may be used in support of defenses. A discovery request is not required, and such documentation to be used as evidence for a defense should be provided to the other parties. *Id*. If a party learns that its discovery disclosure or response is incomplete or incorrect and if the additional information was not otherwise made known to the other parties, that party has a duty to timely supplement or correct its disclosure or response. FED. R. CIV. P. 26(e). Here, Defendants have not provided the Court any reason to question Bankston's assertion regarding the production (or lack thereof) of these documents. Accordingly, the Court **GRANTS** Bankston's motion to strike Defendants' Exhibits 4 and 8, and said exhibits are hereby **STRICKEN**.

## II.     Summary Judgment – Count I Denial of Religious Services

Defendants argue that they are entitled to qualified immunity as to Count I because Bankston has no clearly established right for inmate-led group worship (Doc. 178, pp. 15-18). This Court agrees. To defeat Defendants' qualified immunity defense, the burden is on Bankston to demonstrate that the alleged violation of the Free Exercise Clause right was "clearly established." *Kemp v. Liebel*, 877 F.3d 346, 351 (7th Cir. 2017). A right is clearly established when existing precedent places the statutory or

constitutional question beyond debate. *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015). The Seventh Circuit "look[s] first to controlling Supreme Court precedent and [its] own circuit decisions on the issue." *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000). Next, when no controlling precedent exists, the Seventh Circuit "broaden[s] [its] survey to include all relevant caselaw in order to determine 'whether there was such a clear trend in the caselaw that we can say with fair assurance that the recognition of the right by a controlling precedent was merely a question of time.'" *Id.* (quoting *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir. 1989)).

Rather than arguing that inmate-led group worship is a clearly established right, Bankston argues that Defendants are leap-frogging to the conclusion that inmate-led group worship is not a clearly established right (Doc. 181, pp. 5-8). Bankston misses the point. Bankston sought NGE religious services at Shawnee, but he was unable to find a volunteer to lead group worship as required by Illinois Administrative Code. *See* Ill. Admin. Code tit. 20, § 425.60. Bankston also did not satisfy the conditions to have group worship without a volunteer. *See* Ill. Admin. Code tit. 20, § 425.60 (f)(1)-(6). Bankston argues that Defendants have not provided a justification for the denial of Bankston's requested services and did not participate in the procedure when a volunteer is unavailable. But the Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).

Although Bankston tries to frame his complaint as one for the simple denial of

religious services, he is really contending that the prison should have offered NGE services in the absence of an outside volunteer—meaning that an inmate would have to lead. Bankston, however, does not have a clearly established constitutional right to inmate-led group worship. *See West v. Grams*, 607 F. App'x 561, 565 (7th Cir. 2015) (acknowledging that "[i]t has never been clearly established that inmates have a right to inmate-led group worship under the First Amendment"). Accordingly, Defendants are entitled to qualified immunity, and their motion for summary judgment with respect to Count I is granted.

### III.  Summary Judgment – Count III Nonconforming Kosher Diet

Bankston did not oppose Defendants' Motion for Summary Judgment as to Warden Dennison and Chaplain Sterrett's personal involvement regarding Count III (Doc. 178, pp. 14-19).[2] Pursuant to Local Rule 7.1(c), a party's "[f]ailure to timely file a response to a motion may, in the Court's discretion, be considered an admission of the merits of the motion." Thus, the Court deems Bankston's failure to respond and oppose these arguments regarding Warden Dennison and Chaplain Sterrett as an admission of the merits of the motion filed by Defendants. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

As for the remaining Defendant, Chaplain Williams, he too is entitled to summary judgment as to Count III. To survive summary judgment on a First Amendment claim, a

---

[2] Defendants also seek summary judgment on Count I as to Warden Dennison because he was not personally involved in any of the alleged conduct. The Court deems Bankston's failure to respond and oppose the argument regarding Warden Dennison as an admission of the merits of the motion filed by Defendants.

prisoner must raise a material question of fact regarding whether prison officials substantially burdened his religious practices. *See Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). Indeed, the Seventh Circuit has found:

> At a minimum, a substantial burden exists when the government compels a religious person to perform acts undeniably at odds with fundamental tenets of his religious beliefs. But a burden on religious exercise also arises when the government puts substantial pressure on an adherent to modify his behavior and to violate his beliefs. Construing the parallel provision in RLUIPA, we have held that a law, regulation, or other governmental command substantially burdens religious exercise if it bears direct, primary, and fundamental responsibility for rendering a religious exercise effectively impracticable.
>
> * * *
>
> [T]he substantial-burden test under RFRA focuses primarily on the intensity of the coercion applied by the government to act contrary to religious beliefs. Put another way, the substantial-burden inquiry evaluates the coercive effect of the governmental pressure on the adherent's religious practice and steers well clear of deciding religious questions.

*Korte v. Sebelius*, 735 F.3d 654, 682–83 (7th Cir. 2013) (quotations and citations omitted).[3] In the context of a religion's dietary requirements, a "prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition." *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009); *see also Jones v. Carter*, 915 F.3d 1147, 1150 (7th Cir. 2019) ("[w]hen the state forces a prisoner to choose between adequate nutrition and religious practice, it is imposing a substantial burden on his religious practice. . . .").

Here, Bankston alleges the kosher diet meal trays previously received by Bankston

---

[3] While the Court in *Korte* discusses the term "substantial burden" in the context of the Religious Freedom Restoration Act, the term originated from judicial decisions interpreting the Free Exercise Clause. *Id.* at 671.

conformed to his religious dietary restrictions, but Shawnee changed the composition of its kosher meal trays and these new kosher trays no longer conform to Bankston's religious dietary restrictions (Doc. 129, p. 6). Construing the evidence in the light most favorable to Bankston, Bankston was subjected to a non-conforming kosher diet for a handful of months in 2018.[4]

Being subjected to a non-conforming kosher diet for a handful of months is not a substantial burden. Federal courts have routinely held that "where a delay in providing an inmate with a religious diet is brief and caused by ordinary administrative delay, the inmate's religious rights are not violated." *Tapp v. Stanley*, 2008 WL 4934592, at *7 (W.D.N.Y. Nov. 17, 2008) (finding that defendant was entitled to summary judgment on plaintiff's First Amendment claim even when the plaintiff was denied kosher meals from April 4, 2004 to July 23, 2004); *see, e.g.*, *Lambright v. Indiana*, 2020 WL 4451075, at *3 (N.D. Ind. Aug. 3, 2020) (holding that defendant was entitled to summary judgment on plaintiff's First Amendment claim even when the plaintiff experienced a sixty-two day delay in receiving a kosher diet); *Green v. Paramo*, 2018 WL 6062359, at *4 (S.D. Cal. Nov. 20, 2018) (dismissing plaintiff's First Amendment claim although the plaintiff experienced a five month delay in receiving approval for a kosher diet); *McCormack v. Myers*, 2007 WL 1704905, at *4-5 (D.S.C. June 12, 2007) (acknowledging that plaintiff was not given kosher meals for two and a half months, but plaintiff failed to demonstrate that

---

[4] A review of the record shows that on January 11, 2018, Bankston arrived back at Shawnee and continued receiving his kosher diet (Doc. 178, p. 9). But around March of 2018, Bankston requested to be removed from his kosher diet because "it isn't kosher and doesn't fit [his] religious diet." (*Id.* at p. 11). On April 9, 2018, Defendants Sterrett and Dennison approved Bankston's request to discontinue his religious diet (*Id.*). By April 21, 2018, Bankston was transferred to Lawrence (Doc. 140, p. 4; Doc. 173, p. 4).

the actions of the defendants violated any of his constitutional rights).

Even if the alleged non-conforming kosher meals were sufficient to substantially burden Bankston's religious practices, nothing indicates that the non-conforming kosher meals or the delay in accommodating Bankston were caused by Chaplain Williams. In April of 2017, Chaplain Williams retired from the IDOC (Doc. 178, p. 7). More than a half a year later, on December 1, 2017, Bankston was approved for a kosher diet (*Id.* at pp. 7-9). Chaplain Williams was not even working in the IDOC when Bankston received a kosher diet. Accordingly, Defendants' motion for summary judgment with respect to Count III is granted.

Because this Court grants Defendants' Motion for Summary Judgment on Counts I and III, Defendants' Motion for Summary Judgment as to Bankston's prayer for compensatory and punitive damages is rendered moot.

## Conclusion

For the reasons set forth above, Bankston's Motion to Strike (Doc. 183) is **GRANTED**. Defendants' Motion for Summary Judgment (Doc. 178) is **GRANTED** as to Counts I and III**.** The motion is **DENIED** as moot regarding Bankston's claim for compensatory and punitive damages. Plaintiff Johnnie Bankston shall recover nothing. The Clerk of Court is **DIRECTED** to enter judgment and close this case.

**IT IS SO ORDERED.**

DATED:  September 14, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**